[Civ No. 3233. Fourth Dist. Oct. 25, 1943.]

RICHARD JORDAN, a Minor, etc., et al., Appellants, v.
E. M. HARVEY et al., Respondents.

Mize, Kroese & Larsh for Appellants.

Roland Thompson for Respondents.

BARNARD, P. J.—This is an action for damages. Richard Jordan, the minor plaintiff, was bitten by a Scotch Terrier dog. On the occasion in question Richard, who was 9 years old, was playing in a private garage with his brother Robert and two Jardine children. Fortunately, the boy was not seriously injured and the special damages proved, the cost of medical attention and supplies, amounted to about

$35. .There were several Scotch Terrier dogs in the neighborhood and the principal issue at the trial of the case was as to whether or not the dog that bit Richard was the one owned by the defendants. The court, sitting without a jury, found for the defendants, finding specifically that the dog owned by them did not bite the minor plaintiff. A motion for a new trial was denied and the plaintiffs have appealed from the judgment.

In a written opinion ordering judgment for the defendants and directing their counsel to prepare findings the court said, among other things, "It therefore resolves itself into simply a question of fact. The day after Plaintiff was bitten, the only eyewitness stated to Mrs. Harvey, one of the Defendants, that she was not sure 'Sandy' was the dog that had bitten Plaintiff. The testimony adduced by Defendants would preclude any possibility of the dog 'Sandy' having bitten Plaintiff." ▮ Appellants' first contention is that "the statement contained in the court's opinion to the effect that there was only one eyewitness to the biting is contrary to the evidence." It is argued that this statement in the opinion discloses that the trial judge, in reaching his conclusion, based it upon the erroneous belief that there was only one eyewitness, when in fact all four of the children who were playing in the garage saw what occurred.

The opinion of the court neither indicates that the trial judge took an erroneous view of the law applicable to the case (see *Coakley* v. *Ajuria*, 209 Cal. 745 [290 P. 33]), nor that any misconception of the facts was responsible for the decision. The court not only referred to the uncertainty of this one witness but pointed out the definite nature of the evidence for the respondents, including a comment on two other phases of the evidence, and then finally observed that the appellants had not met the burden of proof resting upon them.

While the court referred to but one of the eyewitnesses the testimony of all four of them discloses, in greater or less degree, an uncertainty with respect to the identification of this dog. Richard Jordan testified that it was dark ·at the time although there was a light in the garage, that he knew the Harveys had a "Scotty" as he had seen it in the road in front of their house, that this was the first time he

had ever seen the dog which bit him, and that "I never knew whose it was when I first came in." On redirect examination he testified that he had seen the dog on several previous occasions but that "I wasn't familiar with the dog though." When asked if he thought he could identify the dog if it was brought into court with two or three other "Scotty" dogs, he replied: "I wouldn't like to have him brought up here." Robert Jordan was asked on the stand if he would say that the dog he saw bite his brother was the same dog he had seen around the Harvey place, and he replied: "I wouldn't be sure—but he looked a lot like that dog." Laurs Jardine testified that she had seen the dog that did the biting in front of the Harvey house and around her own home and that after the biting she chased it down the sidewalk until it ran in between the Harvey house and the one next to it. Jack Jardine testified that the dog that bit the minor plaintiff was the Harveys' dog, "at least so we thought." While on the witness stand he admitted that on the day after the biting occurred he had told Mrs. Harvey that he didn't know whether it was her dog or not. A little later he testified "I am under the impression it was the Harvey dog," and that he formed this impression from talking to other people in regard to it and not knowing any other "Scotty." Another boy testified that a couple of days after the incident Jack Jardine had told him that he could not be sure what dog had bitten Richard because he had noticed other similar dogs in the neighborhood.

Not only does the testimony of these four eyewitnesses disclose an uncertainty with respect to identifying this dog as the one owned by the Harveys, but other portions of their testimony strongly indicate that the offending canine was not the Harvey dog. Each of these children was very positive that the dog which did the biting was a black "Scotty" with gray streaks in it which were very noticeable. On the other hand, it was clearly established by other evidence that the Harvey dog was a black one without any gray streaks in its fur. Moreover, if the testimony of some five witnesses for the defendants is to be believed the Harveys' dog was confined in their home at the time in question and could not have bitten this boy. This fact was pointed out by the court in its written opinion and the only reasonable conclusion is that the court accepted that evidence as true.

After reading all of the evidence we are unable to see how the court could have been reasonably expected to decide the case the other way. Under such circumstances, and in view of the court's statement in its entirety, it cannot be held that the decision was based upon the mistaken reference therein to "the only eyewitness," or that this statement discloses a misconception of the controlling facts.

It is next contended that the court erred in sustaining objections to questions asked of two witnesses for the plaintiffs on rebuttal. Mrs. Harvey had testified that on the next day after the biting occurred she had a conversation with Laurs and Jack Jardine when Mrs. Jordan and several others were present, during which she asked the two Jardine children whether they were positive whether it was her dog that had bitten Richard Jordan, and that both children had replied, in effect, that they thought it was "Sandy" but that they could not swear to it. Frances Harvey, the daughter of the respondents, testified to the same effect. On rebuttal, Mrs. Jordan was asked a question with reference to this conversation and an objection was made on the ground that this was not proper rebuttal and that the matter had previously been gone into with this witness. After some argument, in which the witness participated, counsel for the appellants withdrew the witness without the objection having been directly ruled upon. The record discloses that this witness had not previously been asked about this conversation. However, no offer of proof was made and counsel for the appellants may have misled the court when, in arguing the matter, he stated: "She was asked on cross-examination about that, and went into the details." Moreover, Jack Jardine, while on the witness stand, had admitted that during this conversation he had told Mrs. Harvey that he could not swear that the dog in question was her dog. Laurs Jardine was also called on rebuttal and, her attention being directed to this conversation, was asked whether she had then stated that she was not sure whose dog it was that bit Richard. A similar objection to this question was sustained. It appears from the record that practically the same question had been asked during her previous cross-examination, at which time she replied that she could not remember making the statement. While Mrs. Jordan should have been allowed to answer the question asked of her it cannot be held, under the circumstances here appearing, and in view of the other matters to which we have

referred, that any possible error in that connection could be sufficiently prejudicial to justify a reversal.

The only other point raised is that the court erred in sustaining objections to and striking out certain statements as being hearsay and not part of the res gestae. The statements in question were that " 'Sandy' Harvey bit my eye out" and that "The Harvey dog bit Richard in the eye," and were said to have been made by Richard and Robert Jordan, respectively, as they ran into their home shortly after the biting occurred, there being but one house intervening between their home and the garage where they had been playing. Assuming that these statements were admissible (see *Showalter* v. *Western Pacific R. R. Co.*, 16 Cal.2d 460 [106 P.2d 895]), it does not follow that their exclusion was sufficiently prejudicial to require a reversal. The obvious purpose of offering the statements was for their value in identifying the dog that had done the biting. Both of these boys disclosed in their testimony in this case that they had thought that the dog in question was the Harvey dog although, as we have noted, their testimony in this regard was somewhat uncertain. These statements, had they been admitted, would have added little to the testimony that was actually produced and their value would have been affected by the other matters to which we have referred, a part of which appears in the testimony of the boys themselves. It does not appear that the admission of the testimony here in question could have affected the result and we are far from convinced that any miscarriage of justice has resulted.

For the reasons given the judgment is affirmed.

Marks, J., and Griffin, J., concurred.